Hoes and wife, and others, *agt.* Van Hoesen.

---

HOES AND WIFE, AND HAGER AND WIFE, appellants, *agt.* VAN HOESEN, respondent.

### Questions discussed.

1. Where the testator devised and bequeathed all of his farm of land, with all thereto belonging, with his house, barn, &c., to his two sons, John and George, their heirs and assigns forever, share and share alike, with all of his farming utensils, and also all his stock of whatever nature then on his farm; to his son Lambert, he bequeathed $3,000, to be paid within one year after his decease, by his two sons, John and George; to each of his three daughters, Mary, (called Dorothe,) Anna and Jane, he bequeathed the sum of $700, also to be paid by his said two sons, John and George, as they severally should become of age; to his wife, Dorothe, he gave the use and income of all his estate during her widowhood, and there being personal property amounting to nearly $6,000, not specifically disposed of by the will.

Whether, after the death of the widow, the appellants, as heirs at law, were entitled to an account of the reversionary interest in that part of the personal estate not specifically bequeathed to the two sons, John and George, and payment of their shares therein as next of kin of the testator?

2. Whether by the construction of the will, the legacies (to the four children) were to be paid by the devisees *personally* on account of the devise of the *real estate* to them, or whether the reversionary interest in the *personal estate* not specifically bequeathed, was the primary fund for their payment, and which the devisees were authorized thus to appropriate?

3. Whether releases each for $700 executed by the appellants, (Mary and

Anna,) for their legacies under the will, precluded them from claiming, as heirs at law, their share in the reversionary interest of the personal estate not specifically bequeathed?

The bill in this cause was filed before the vice chancellor of the third circuit, on or about March 17, 1839, by the above named complainants against the above named defendant.

The answer of the defendant was put in May 30, 1839, and a replication filed thereto, on or about June 18, 1839.

An order to produce witnesses was entered, on or about Aug. 11, 1840, and an order to close the proofs, on or about the day of Nov. 1840.

No proofs being taken, the cause stood for hearing before said vice chancellor upon the pleadings.

The bill set forth as in the abstract of bill and answer hereto annexed.

The answer admitted and denied, &c., as in said abstract hereto annexed.

The replication to said answer was general, in the usual form.

The cause was argued June 15th, 1841, before Hon. JOHN P. CUSHMAN, then vice chancellor of the third circuit.

On the 28th day of October, 1842, a decree was entered upon the decision of said vice chancellor, from which decree the defendant duly appealed to his honor, the chancellor.

*The bill states,* that Matthew Van Hoesen, having a large real and personal estate, on the 17th September, 1817, made his will, devising to his sons *John* and *George* his farm, and all belonging to it, in equal portions, together with the farming utensils and stock; to *Lambert,* $3,000, payable in one year after testator's death, by John and George; to *Dorothy, Anna, and Jane,* $700 each, payable when they became of age, by John and George.

Testator's wife, Dorothe, to enjoy the use and income of all the estate during widowhood. Testator's wife Dorothy, appointed executrix, and John and George executors. (*Fol.* 1, 2, 3.)

*Answer.*—The testator died September 17, 1817. (*Fol.* 2.)

That at the time of his death he was seized of a farm of

about 190 acres, worth not over $45 to $50 an acre. The will was made the day of, and shortly before his death. Copy of will set forth in schedule A, nearly corresponding with that in the bill. (*Fol.* 9.)

*Bill.*—Matthew Van Hoesen left only six children, viz., John M., Lambert, George, Jane, Mary, and Anna. (*Fol.* 4.)

*Answer.*—Admitted. (*Fol.* 10.) The daughters were Maria, (called Mary in the bill,) Annatje, (in English Hannah, but called Anna in the bill,) and Jane.

*Bill.*—That said Mary Van Hoesen was misnamed " Dorothy" in said will, and the executors have regarded it as a mistake, and have paid her $700 accordingly. (*Fol.* 4, 5.)

*Answer.*—That defendant has no knowledge as to this, except from what appears on the face of the will, and from the fact of their being daughters of the testator. Defendant paid them the $700 each, upon their executing releases, and not otherwise. Has regarded Maria Hoes as having been named Dorothy, so far as to pay the legacy under the circumstances in said answer thereafter detailed, and no further. (*Fol.* 10, 11, 12.)

*Bill.*—That the testator had a large personal estate, and especially the goods, credits, &c., mentioned in schedule A, which is a copy of an inventory filed by the executors in the surrogate's office, Sept. 3, 1818. (*Fol.* 6, 7.)

*Answer.* Testator's personal estate was truly stated in said inventory, except in some trifling particulars minutely disclosed in the answer. (*Fol.* 3–7.)

*Bill.*—That the testator had other goods, demands, &c., not set forth in the inventory, (of which a discovery is prayed.) And that the testator owed no debts, or if any, to a very small amount; and if the executors have paid any debts with the personal property, very little has been so paid. (*Fol.* 7, 8.)

*Answer.*—There were some articles of furniture not inventoried, because the widow claimed them, and all the heirs assented to such claim. All of said articles (except some of little value, not worth altogether over $20 to $40, and a looking-glass, inventoried at $20, which remain on the premises)

18

were, after the widow's death, divided among the children, and the complainants had their full share. (*Fol.* 7, 9.)

The testator owed but little. Defendant paid funeral expenses and debts, as set forth in schedule B.

*Bill.*—That by the will, the use of all the personal property belonged to the widow, and after her death belonged to the children generally, except the farm, stock, and utensils. (*Fol.* 8, 9.)

*Answer.*—(*Fol.* 13.) By a strict construction of the will, the widow was entitled to the use and income of the whole estate, real and personal, so long as she remained his widow. She remained his widow until she died, June 10th, 1834. Defendant submits to the court, whether, under the circumstances, the personal property belonged to the children as distributees; but is advised said personal property, in equity, does not belong to the children, as heirs at law. The legacies were payable out of the personal property, and the executors could not be compelled to pay them till the widow's death.

*Bill.*—That Jane Van Hoesen died in July, 1838. The other five children still survive. (*Fol.* 9.)

*Answer.*—Admits she died July 15, 1838, and that the others still survive. (*Fol.* 17.)

*Bill.*—That Dorothy Van Hoesen, the widow, died in June, 1834, without having again intermarried. (*Fol.* 10.)

*Answer.*—Admitted. (*Fol.* 14.)

*Bill.*—That John M. Van Hoesen and Goerge Van Hoesen, (testator's brother,) qualified as executors—Dorothy, the widow, did not. George died in 1822, leaving John M. sole executor. (*Fol.* 10, 11.)

*Answer.*—Admitted. (*Fol.* 17.) The widow renounced.

*Bill.*—That John M. Van Hoesen never delivered any portion of the personal property to the widow, but always used it as his own, under pretence that he did own it. (*Fol.* 11, 12.)

*Answer.*—Defendant worked for his father till about twenty-seven years of age, without pay, and aided much in acquiring the property. The other children did much less, and defendant ought to have had a larger portion. At testator's death, George

Van Hoesen was about sixteen years old. Neither he nor defendant had any property of any consequence. Defendant is advised, and believes, that by the will, the widow had the exclusive right to the use of all the estate until her death or re-marriage. She was a healthy woman, about forty-eight years of age. (*Fol.* 18, 21.)

*Bill.*—That shortly after testator's death, John M. collected the debts, &c., or sold them, or turned them out in payment of demands against him. Believe he delivered a part of them to Lambert, in payment of his legacy of $3,000, about the time said legacy became due. The whole of said legacy was paid out of testator's personal estate, and that the widow never had or received any portion of the income of said personal property, but that John M. applied the entire proceeds thereof to his own use.

*Answer.*—That testator fell sick on Monday, was considered dangerously ill Tuesday, and died Wednesday afternoon. Nicholas Kittle, an ignorant and unskilled man in such matters, was called on to draw the will, a few hours before testator died, and when he was too weak to ascertain whether it conformed to his directions or not. Defendant understood from his mother that testator directed Kittle to draw the will so as to give the farm, &c., to defendant and George, subject to a life estate to the widow, and the legacies to be paid out of the personal property—it not being so drawn was through Kittle's ignorance. Defendant submits that such should be the construction. (*Fol.* 21, 25.) It was well understood that he meant to give the farm to John and George, and the money to Lambert and the girls. (*Fol.* 25, 26.)

*Bill.*—The legacies to the daughters were also paid by John M. out of the avails of testator's personal estate, although a charge upon him and his brother George personally. (*Fol.* 16.)

*Answer.*—Admitted. (*Fol.* 49, 50.)

*Bill.*—Dorothy Van Hoesen, the widow, was entitled to the use of all the personal property during her life. The income of the real estate was more than sufficient to support the widow. John M. did not deliver the goods, credits, &c., to the widow,

Hoes and wife, and others, *agt.* Van Hoesen.

but shortly after her death disposed of them, or appropriated them to his own use. (*Fol.* 17, 18.)

*Answer.*—Admits that defendant did not deliver to the widow the goods, chattels, &c., but retained the same to pay the legacies and claims, debts and funeral expenses of testator, upon an agreement made with the widow. (*Fol.* 49, 50.) Defendant cannot state with accuracy whether the use and income of real estate were more than sufficient to support the widow and her minor children, whom she supported; but to the best of knowledge and belief, were not more than sufficient to support said widow and her children comfortably, as supported by defendant. (*Fol.* 51, 52.)

That shortly after death of testator, defendant made an agreement with the widow, by which he took possession of the farm, together with the stock, farming utensils and other goods, and chattels undisposed of, as before mentioned, and used, occupied and enjoyed the same for his own benefit and that of his brother George, until 1825, when defendant bought George out; and as a compensation to the widow therefor, supported and maintained her during her life with every necessary and comfort, and provided for her minor children during their minority, and, as he believes, to the widow's entire satisfaction. (*Fol.* 52, 53.) That he paid for her physician's bills to an amount not less than $639, she having within a few years after testator's death become infirm and afflicted with frequent illness. That he permitted the widow to use the dwelling-house of which testator died seized, to receive and entertain her friends, with entire freedom and uncontrol, as if she had been sole owner of said real estate, goods, &c. And that defendant being unmarried, boarded and resided with her as a member of the family. (*Fol.* 54, 55.)

*Bill.*—After the marriage of Hoes with Mary, and before the death of the widow, from ten to eighteen years ago, defendant paid to Hoes and wife $700, with interest, in satisfaction of Mary's legacy, for which a receipt was given by Hoes and wife, or one of them. No more than was due upon the legacy was paid when the receipt was given. Intended to give a receipt for the legacy, and nothing more. They understand defendant

Hoes and wife, and others, *agt.* Van Hoesen.

pretends said receipt cuts off complainants' claim to any share of testator's personal estate. If said receipt purports to cover anything but the legacy, it is false and fraudulent, and should be no bar in equity. (*Fol.* 18, 19, 20, 21, 22.)

*Answer.*—That defendant paid said legacy of $700 to Maria, who was then twenty-four years of age, and unmarried, and who agreed to receive the same, and executed to defendant and his brother George, and the executors, a full release of all claims upon real and personal estate of the testator; said release dated Dec. 26, 1818, and is contained in schedule C, (*Fol.* 38, 39, 40;) that defendant gave her his note for $700, and paid same to Hoes after his marriage, except a small portion, which he paid to her, (*Fol.* 40;) denies that release was fraudulent, &c., (*Fol.* 37,) and insists that same is binding. (*Fol.* 55.)

*Bill.*—Hoes and wife had never seen the will when the receipt was executed. The will was in possession of defendant, who knew the contents and legal effect thereof; and that Hoes and wife, after the widow's death, would be entitled to one-sixth of the personal estate of the testator. Complainants believe defendant had been so advised, and knew or suspected complainants were ignorant of it; believe that if said receipt covers anything but the legacy, defendant prepared the same with the knowledge that complainants would be entitled to a share of the personal estate, after death of the widow, and supposing complainants to be ignorant that such was the legal effect of the will. (*Fol.* 23, 24, 25, 26.)

*Answer.*—That the will was opened six weeks after testator's death, and read in presence of all the family, audibly. In March after, proved and recorded, and will returned to defendant. Denies positively, that he has ever misrepresented contents, or done anything to prevent or divert complainants from going to the record to see contents, or that he has ever declined giving them free access to the original. Admits he became acquainted with contents when will was opened and read, but did not, nor does he now know, what would be the legal construction. Denies that he suspected they were ignorant of the contents when the releases were executed. (*Fol.* 26, 31.) Vanderpoel and others advised him, as friends, that will did not

clearly express testator's intention; there might be trouble, and advised him to get a release. (*Fol.* 31, 33.) Denies he supposed they would hold the personal property after widow's death, except what he derived from the advice of Vanderpoel and others. Admits complainants did not, probably, know of such advice, and that, probably, they did not know whether they would be entitled to a distribution after widow's death or not; but has no doubt they knew what had been the intention of the testator; and that they were then willing to carry it into effect; and that they executed the releases with a full knowledge of their contents for that purpose. (*Fol.* 33, 36.) Expressly denies any art, stratagem, or device, or misrepresentation or fraud, but says, mutual liberality and good feeling induced the widow to relinquish, and the settlement to take place. (*Fol.* 36, 41.) Releases were executed, with full knowledge of their contents, and of their rights, or with means of knowing their rights, and without fraud or misrepresentation on his part. (*Fol.* 42, 45.) Denies that he made, or was called on to make, any representation one way or the other. (*Fol.* 45.)

*Bill.*—The same statements and charges as are above made with respect to the legacy to Mary, are repeated with respect to the legacy to Anna. (*Fol.* 26–34.)

*Answer.*—The same statements and denials are made with reference to legacy to Anna as to Mary, except that the legacy to Anna was paid to complainant, Hager, after his marriage with Anna, who executed the release. (*Fol.* 41, 42.)

*Bill.*—Hoes and wife believe and charge, that they are entitled to one-sixth of all the personal estate of the testator, (except the stock and farming utensils,) with interest upon the same from testator's death, or since the defendant converted the same to his own use. (*Fol.* 34, 35.)

*Answer.*—Insists the release is binding, and that they are entitled to nothing. (*Fol.* 55, &c.)

*Bill.*—Hager and wife make the same statement. (*Fol.* 36, 37.)

*Answer.*—Insists upon release, &c. (*Fol.* 55, &c.)

The vice chancellor decreed that the complainants were each entitled, as distributees, to one-sixth part of the personal prop-

erty which was bequeathed to the widow, and which the defendant, as executor, should obtain and distribute.

The defendant appealed to the chancellor, and on the 24th of April, 1846, the chancellor made a decree, by which the decree of the vice chancellor was reversed, and the complainants' bill dismissed with costs.

From that decree the complainants appealed to this court.

*Miller and Hogeboom, Attorneys and*
*Henry Hogeboom, Counsel* for appellants.

*First.* The testator, Matthew Van Hoesen, not having disposed of his personal property, (except his farming utensils and stock on his farm,) by his last will and testament, the same passed by the laws of intestacy to his widow and next of kin. The female complainants being two of the six children of the testator, are, with their husbands, therefore entitled to their proper proportion thereof.

The respondent, John M. Van Hoesen, being the sole surviving executor of said will, and having possessed himself of that property, and used and enjoyed it for his sole benefit, is answerable for it, and liable to account in this suit to the complainants for their proper proportion thereof. (1 *Barb.* 396, *opinion of chancellor;* 6 *Ves.* 571; 19 *id.* 494, *general rules.*)

☞ No residuary clause—and with exception of stock on farm, and interest of widow, no disposition of personal property—bill filed for account of personal distributive shares. *Dorothy* in the will means *Mary.* Bill of two, claims two-sixths, being two of six children—so V. C. decided—that chancellor reversed. Held, if on construction right, still only entitled to two-thirds of two-sixths, as one-third went to the widow—that we think was correct. And we only ask now a modification so as to give us two-thirds of two-sixths.

Widow died in 1834—bill filed in 1839—Jane died in 1838—five children then left. Testator died Sept. 1817—widow proved will—also George and John—brother George died in 1822—bill against John, surviving executor.

Defence, that personal estate should be applied to the pay-

ment of the legacies—and no more than enough to pay—we say there would be a surplus.

Another answer—that Mary, (Maria or Dorothy,) prior to her marriage, released her legacy, and all claim on the estate—and so she and her husband were barred—also that Adam Hager, after marriage, released all the right of his wife—bill charges releases void, except as to the legacies.

Bill charges and answer admits only $700 paid, and so *no consideration* beyond legacy. (1 *C.* 121; 13 *J.* 87.) Void, when *without a seal.* Then (2 *R. S.* 406, § 96) statute opens way to inquire into consideration—and want of consideration makes void. One dollar mentioned in release merely nominal. (9 *Mass.* 235; 4 *B. and P.* 113.)

*Suppressio veri*—parties ignorant of their rights—defendant, *cestui que trust*, should have informed them—show all knowledge they had of facts—(*p.* 35)—will read to family —36–7, what defendant knew—release of Hager, given before death of widow, and don't cover subsequently acquired interest.

(*Clancy H. and W.* 3–10; 9 *P.* 283.) Husband could not then reduce to possession.

*Second.* The legacies to the children, Lambert, Dorothy, Hannah and Jane, were not payable out of the personal estate, but by the devisees, John and George. They are not payable by the executors, but by the devisees personally, and evidently on account of the devise of the real estate.

Although the personal estate is generally the primary fund for the payment of legacies, as well as of debts, yet if there be an express direction, that they be otherwise paid, or if from the scope and tenor of the will the testator's intent may be fairly inferred to be otherwise, then such intent will prevail, and the testator's personal estate be exonerated.

Again, assuming that the legacies are to be paid out of the personal property, the chancellor, instead of dismissing the bill, should have directed an account of the personal property to be taken, to ascertain whether the debts and legacies would exhaust it. (*Kelsey* v. *Deyo,* 3 *Cow. Rep.* 133, 141; *Harris* v. *Fly,* 7 *Paige,* 421, 425; *Burton* v. *Knowlton,* 3 *Ves.* 106, 113;

*Watson* v. *Buckwood*, 9 *Ves.* 456; *Webb* v. *Jones*, 2 *Br. Ch. Cas.* 60; 18 *W.* 200.)

*Third.* The release of Hoes's wife, before her marriage, and that of Hager after his marriage, discharged nothing but the $700 legacies.

The $700 was all that was received, and the releases should therefore be limited to that sum. They were intended to cover nothing more, and it would therefore be inequitable and unjust to give them a more comprehensive operation. If Van Hoesen designed to embrace in them something more, it was an unconscientious and fraudulent act on his part, which should not be permitted to prevail.

The release of Hager was inoperative and void as to any thing beyond the $700, as he could not discharge any thing belonging to his wife, beyond a vested interest in possession. This was not such an interest. (*Jackson* v. *Stackhouse*, 1 *Cow.* 126; *McIntyre* v. *Clark*, 1 *Edw. Ch. Rep.* 34; *Cole* v. *Knight*, 3 *Mod.* 277; 1 *Show.* 150, *S. C.* ; 2 *Saund. Plead. and Ev.* 320; *Ramsdell* v. *Hylton*, 2 *Ves. Sen.* 310; *Salkeld* v. *Vernon*, 1 *Eden's Rep.* 64; *Jarvis* v. *Drake*, 1 *Vern.* 19; *Gee* v. *Spencer*, 1 *Vern.* 32.)

☞ REPLY. (6 *C.* 333; 1 *Roper Leg.* 485–40, 41; *I.* 38, 39; 1 *Roper*, 166–7; 4 *Mad.* 148. ☜

HOGEBOOM & MILLER, *Solicitors.*
H. HOGEBOOM, *of Counsel for Appellants.*

*Edward Clark, Attorney,* and
*Ambrose L. Jordan, Counsel* for respondent.

*First.* The releases from the appellants to the respondent, set forth in the answer, were obtained by the respondent in good faith, and are a bar to the complainants' recovery.

*Second.* The legacies were not expressly charged on the real, in exoneration of the personal estate, nor can any plain intent to that effect be gathered from the terms of the will. The personal property, therefore, was the primary fund for the payment of the legacies, and was rightfully appropriated by the executors (after obtaining the widow's consent) to that use.

Hoes and wife, and others, *agt.* Van Hoesen.

(*Ancaster* v. *Mayer and others*, 1 *Bro. C.* 460, 463; *Watson* v. *Buckwood*, 9 *Ves.* 448; *Tait* v. *Lord Northwick*, 4 *Ves.* 816; *Livingston* v. *Newkirk*, 3 *Johns. Ch.* 319; 2 *Atkyns*, 434; 3 *P. Wms.* 364; *Kelsey* v. *Deyoe*, 3 *Cow.* 133; *Tole* v. *Hardy*, 6 *Cow.* 333; 8 *Conn.* 5; 5 *Conn.* 536; 6 *Rand.* 587.)

*Third.* The decree of the chancellor should be affirmed, with costs.

A. L. JORDAN, *of Counsel for respondent.*

☞ Personal estate, besides farming utensils, &c., given to two sons, about $4,300.

Testator made no provision for payment of legacies. Widow lived seventeen years—and she had whole estate—sons had no property, so far as appears—family congress—mother agreed to give up her right. Defendant paid her a consideration— agreed to support her for life. Daughters agreed to take their legacies out of the personal property. Defendant supported his mother—paid doctor's bills, &c. Releases good answer— and clearly, personal property was the primary fund. ☜

DECISION.—Decree affirmed. Unanimous.

JEWETT, Ch. J., delivered the opinion of the court.

NOTE. *Held*, that the personal estate of the testator is deemed the natural and primary fund to be first applied in discharge of his personal debts and general legacies, and the testator is presumed to act upon this legal doctrine, until he shows some other distinct and unequivocal intention.

It seems from the will, that it was the intention of the testator that the devise and bequest to the two sons, with directions to them to pay, should be in *aid* of the reversionary interest in the personal estate undisposed of by the will, and that that interest should be the primary fund for the payment of the legacies.

The mere making a provision for the payment of debts or legacies out of the real estate does not discharge the personalty. There must be an intention not only to charge the realty, but to *exonerate* the personalty.

The decree affirmed upon this point alone.

*Reported,* 1 *Comstock*, 120.